UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH ST. SAUVER,<br><br>                              Plaintiff,<br><br>v.<br><br>BYRD-HUNT,<br><br>                              Defendant. | Case No.:  20cv0584-JAH-MDD<br><br>**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 19]** |

This Report and Recommendation is submitted to United States District Judge John A. Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment be **GRANTED IN PART and DENIED IN PART**.

## I.   PROCEDURAL HISTORY

On March 26, 2020, Plaintiff Kenneth St. Sauver ("Plaintiff"), a state prisoner incarcerated at Salinas Valley State Prison and proceeding *pro se*

and *in forma pauperis*, filed a civil complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1, hereinafter "Compl."). Plaintiff's claims against Defendant Paramo did not survive the Court's Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). (*See* ECF No. 6 at 5). Plaintiff's causes of action against Defendant Byrd-Hunt ("Defendant") for retaliation and use of excessive force in violation of the First and Eighth Amendments remain. (ECF No. 6 at 5-6; Compl.).

On April 12, 2021, Defendant filed the instant motion for summary judgment. (ECF No. 19, hereinafter "MSJ"). Plaintiff filed a response in opposition on June 10, 2021. (ECF No. 25, hereinafter "Oppo."). Defendant filed a reply on June 16, 2021. (ECF No. 27, hereinafter "Reply").

## II.   STATEMENT OF FACTS

Plaintiff alleges Defendant ordered inmate Palmer to attack him in retaliation for Plaintiff's refusal to participate in officer-sanctioned fights and for reporting staff misconduct. (Compl. at 15-16; Oppo. at 1).[1] Additionally, Plaintiff alleges Defendant retaliated against him by searching his cell and destroying his property, by striking Plaintiff on the head with her baton, and by issuing false and contradictory statements in Rules Violation Reports to cover up the attack. (Oppo. at 1). Defendant denies ordering Plaintiff to attack or fight any inmate at any time and denies ordering inmate Palmer or any inmate to attack Plaintiff. (ECF No. 19-3, hereinafter "Def. Decl." ¶ 3, 7).

It is undisputed that a fight between Plaintiff and inmate Palmer occurred in the day room in front of the pill line windows at R.J. Donovan

---

[1] All pincite page references refer to the automatically generated ECF page number, not the page number in the original document.

20cv584-JAH-MDD

Correctional Facility around 7:25 a.m. on June 28, 2018.[2]  (Def. Decl. ¶ 2; ECF No. 19-5, hereinafter "Le Decl." ¶ 2; ECF No. 19-4, hereinafter "Jiminez Decl." ¶ 2; ECF No. 25, hereinafter "Biggs Decl." ¶ 2; ECF No. 25, hereinafter "Walker Decl." ¶ 2).  Defendant, Correctional Officer Byrd-Hunt, responded to the fight when she saw the inmates punching each other with closed fists.  (Def. Decl. ¶¶ 2-3).  On her way to the scene, Defendant yelled for both inmates to "get down."  (*Id.* at ¶ 3).

When Defendant arrived, inmate Palmer was sitting on Plaintiff's back punching him in the back of the head.  (*Id.*).  Defendant ordered them to "get down" again.  (*Id.*).  Plaintiff remained on his stomach.  (*Id.*).  Inmate Palmer moved about six feet away and took a prone position.  (*Id.*).  Another staff member arrived and immediately handcuffed inmate Palmer.  (*Id.*).  Plaintiff began to move his arms and appeared to be trying to get back up.  (*Id.* at 4).  Defendant ordered Plaintiff to "get down" and moved to handcuff him.  (*Id.*).  What happened next is disputed.

According to Defendant and other prison staff witnesses, Plaintiff suddenly jumped to his feet and reached out, grabbing Defendant's waist with both hands.  (Def. Decl. ¶ 4; Jimenez Decl. ¶ 4; ECF No. 21, hereinafter "Esquilin Decl." ¶ 2).  Defendant ordered Plaintiff to "get down," but Plaintiff did not obey.  (Jimenez Decl. ¶ 4).  Defendant declares she feared for her safety and struck Plaintiff with her baton to protect her well-being.  (Def. Decl. ¶ 4).  She declares she aimed for his upper left shoulder, but inadvertently struck him in the back of the head.  (*Id.*).

---

[2] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits.  Disputed material facts are discussed in further detail where relevant to the Court's analysis.  Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

Plaintiff asserts that he could not suddenly jump to his feet because he uses a cane to walk and has back injuries.  (Compl. at 13).  Plaintiff alleges that reports were falsified to cover up the attack.  (Compl. at 14; Oppo. at 1). The parties agree that Plaintiff was knocked unconscious during the events at issue and is unable to independently remember what happened.  (MSJ at 9; ECF No. 19-1, hereinafter "Plaintiff Depo." at 16, 22; ECF No. 19-7, Exhibit D, June 28, 2018 Video Interview of Plaintiff).  According to the sworn declarations of two inmate witnesses provided by Plaintiff, Plaintiff was on the floor in the prone position when he reached out to Defendant and she struck him in the back of his head with her baton.  (Biggs Decl. ¶ 3; Walker Decl. ¶¶ 3-4).

Medical staff immediately attended to Plaintiff because he was bleeding from the back of the head.  (ECF No. 19-2 at 6).  Plaintiff was escorted to the Emergency Transport Vehicle which took him to the prison's medical clinic. (*Id.*).  The lacerations on the back of Plaintiff's head required four stitches and Plaintiff experienced "uncontrollable pain."  (Plaintiff Depo. at 20).

### III.   LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  "If reasonable minds could differ," judgment should not be entered in favor of the moving party. *Id.* at 250-51.

The parties bear the same substantive burden of proof as would apply

4

at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Id.* at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The moving party bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the non-moving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323; *Liberty Lobby*, 477 U.S. at 249).

## IV.   **DISCUSSION**

Defendant moves for summary judgment on Plaintiff's claims against her for retaliation and excessive force. (MSJ). Defendant states that she did not retaliate against Plaintiff, her use of force was reasonable, and she is entitled to qualified immunity. (*See* MSJ). Plaintiff opposes entry of judgment in Defendant's favor and argues there are genuine issues of

material fact that must be resolved at trial.  (*See* Oppo).

### a. <u>First Amendment Retaliation Claim</u>

Plaintiff alleges Defendant retaliated against him for refusing to participate in officer-sanctioned fights and for reporting staff misconduct. (Compl. at 15).  Plaintiff alleges that in retaliation, Defendant searched his cell and destroyed his property, ordered inmate Palmer to attack him, struck Plaintiff on the head with her baton, and issued a false Rules Violation Report.  (Oppo. at 1).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  It is impermissible for prison officials to retaliate against prisoners for engaging in the protected activity of filing administrative grievances, as doing so would leave them with "no viable mechanism to remedy prison injustices." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  The First Amendment protects against such "deliberate retaliation" by prison officials. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

A prisoner suing prison officials for retaliation must prove that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

1    legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

2         Plaintiff has the burden of proving the absence of a legitimate

3    correctional goal for the allegedly retaliatory conduct.  *Pratt*, 65 F.3d at 806.

4    More than circumstantial evidence of timing alone is required for the Court

5    to find Defendant acted with a retaliatory motive.  *Id*. at 808.

6              **i. Retaliatory Cell Search**

7         In his Complaint, Plaintiff alleges Defendant attempted to get him to

8    "take off on" arriving inmates in April and May of 2018.  (Compl. at 15).

9    Plaintiff claims he refused to participate and reported the staff misconduct.

10   (*Id*.).  He alleges Defendant Byrd-Hunt then started threatening that if

11   Plaintiff continued to file 22 or 602 forms, he would regret it.  (*Id*.).  Plaintiff

12   alleges that around May of 2018 Defendant threw an unprocessed 602 form

13   at his face, took his property, and broke his television.  (*Id*.).  Plaintiff

14   explains that his property was destroyed during the second cell search by

15   Defendant, which took place around the beginning of May 2018.  (Plaintiff

16   Depo. at 6-7).  Plaintiff appears to believe that because his cell was searched

17   soon after it had last been searched, Defendant retaliated against him.  (*Id*.

18   at 6).

19        In her sworn declaration, Defendant states that the searches at issue

20   were conducted at random and not in retaliation.  (Def. Decl. ¶ 8).  Defendant

21   explains that random cell searches serve the legitimate penological purpose

22   of inspecting "for contraband that threatens harm to the prison, the staff, and

23   the inmates."  (*Id*.).  Defendant further explains that the relatively quick

24   succession of cell searches is "an accepted correctional tactic…because

25   inmates will sometimes believe that a cell that has just been searched is now

26   safe to hide contraband, thinking that the cell won't be searched again for

27   some time."  (*Id*.).

Plaintiff provides no arguments or evidence beyond his pleadings to demonstrate that his cell was searched and property destroyed because Defendant retaliated against him.  Plaintiff only restates his allegations. (Oppo. at 1).  Conclusory allegations are insufficient to defeat a motion for summary judgment.  *Berg v. Kincheloe,* 794 F.2d 457, 458 (9th Cir. 1986). Accordingly, Plaintiff has failed to establish any causal connection between Defendant's search of his cell and her retaliatory motive.  In line with Defendant's explanation, the Supreme Court has acknowledged that random cell searches are "essential to the effective security of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 529 (1984).

The Court **RECOMMENDS** that summary judgment be granted for Defendant on Plaintiff's claims that Defendant conducted a cell search and destroyed his property to retaliate against Plaintiff in violation of the First Amendment.

### ii.  Force Used in Retaliation

Plaintiff also alleges that Defendant Byrd-Hunt ordered inmate Palmer to attack Plaintiff in retaliation.  (*See* Compl.).  Plaintiff alleges that when inmate Palmer struck him, he said, "Compliments of Byrd-Hunt."  (*Id.* at 11). Plaintiff further alleges that Defendant violently struck him in the head with her baton as a "calculated retaliatory act, due to plaintiff['s] several complaints of her attempts to utilize the plaintiff in gladiator fights." (Compl. at 13).  Plaintiff alleges that as Defendant struck him in the head with her baton, she said he should have listened and "go ahead and 602 this." (*Id.* at 12).

In support of her motion for summary judgment, Defendant provides her declaration stating, "I never ordered inmate St. Sauver to attack or fight any inmate at any time."  (Def. Decl. ¶ 3).  Defendant further declares that

she did not order inmate Palmer to attack Plaintiff, and never asked or ordered any inmate to attack Plaintiff. (*Id.* at ¶ 7). Defendant states that she "did not retaliate against Plaintiff at any time or for any reason" and that all of her actions relative to Plaintiff were motivated by legitimate correctional goals. (*Id.* at ¶ 9). Defendant explains that she used force solely to gain his compliance with her orders to "get down," and to protect herself from his attack. (*Id.* at ¶ 7).

Beyond Plaintiff's allegations of retaliation in his Complaint, which he references in his opposition, Plaintiff provides no direct or circumstantial evidence of Defendant's retaliatory motive. Plaintiff has admitted he does not remember what happened during the incident because he was knocked unconscious. (Plaintiff Depo. at 16, 22; ECF No. 19-7, Exhibit D, June 28, 2018 Video Interview of Plaintiff). As Plaintiff does not remember the incident, there is no support for his allegation that inmate Palmer said, "Compliments of Byrd-Hunt" prior to striking him or that Defendant said "go ahead and 602 this" prior to hitting him with her baton. The declarations Plaintiff submitted in opposition do not refer to his claims that Defendant Byrd-Hunt retaliated against him. (Oppo. at 21-24). Plaintiff's unsupported allegations are insufficient to withstand summary judgment. *See Berg,* 794 F.2d at 458.

Accordingly, Plaintiff's allegations are not supported by the record and the Court **RECOMMENDS** summary judgment be granted for Defendant on Plaintiff's claims that Defendant used force to retaliate against Plaintiff.

### iii.  Rules Violation Report Issued in Retaliation

Plaintiff further alleges that Defendant tried to cover up her retaliatory use of force by fabricating a Rules Violation Report for battery on a peace officer that stated Plaintiff attempted to grab Defendant's waist. (Compl. at

13).  Defendant's declaration supports that she did not issue a Rules Violation Report against Plaintiff in retaliation.  She declares, "I did not retaliate against Plaintiff at any time for any reason."  (Def. Decl. ¶ 9).

Plaintiff has failed to set forth any evidence supporting that his filing of administrative grievances was related to the issuance of this Rules Violation Report.  Mere allegations are not sufficient to defeat a motion for summary judgment.  *Berg,* 794 F.2d at 458.  Therefore, the Court **RECOMMENDS** summary judgment be granted for Defendant on Plaintiff's claim that Defendant issued a Rules Violation Report in retaliation.

## 1. Plaintiff's Objection to the Admission of the Amended Incident Report

Additionally, Plaintiff argues in his opposition that "the introduction of the Amended Incident Report should be deemed inadmissible."  (Oppo. at 4).  Plaintiff identifies various discrepancies among the staff reports of the incident.  (*Id.* at 2-5).  Most significantly, he points out that the Rules Violation Report (ECF No. 25 at 12) says, "As soon as he was struck by the baton, Inmate St[.] Sauver released his hold of me."  In contrast, the incident report (ECF No. 25 at 9) says, "My baton strike had negative results as Inmate St[.] Sauver maintained his grip on my uniform."  It is not clear to the Court which report (or portion) Plaintiff wishes to exclude or why it may be inadmissible.  Accordingly, the Court **OVERRULES** Plaintiff's objection.

### b. Eighth Amendment Excessive Force Claim

Plaintiff also claims Defendant used excessive force against him in violation of his Eighth Amendment rights.[3]  The Eighth Amendment

---

[3] Plaintiff's Complaint also includes an excessive force claim under the 14th Amendment.

20cv584-JAH-MDD

prohibits the infliction of cruel and unusual punishment.  U.S. CONST. amend. VIII.  To prevail on an Eighth Amendment claim under § 1983, the plaintiff must show that he suffered an objectively "sufficiently serious" deprivation.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  The plaintiff must also show that defendant, subjectively, had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur.  *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7 (citing *Whitley v. Albers*, 475 U.S. 312).  To determine whether the force used was excessive, courts consider factors such as: 1) "the need for the application of force," 2) "the relationship between the need and the amount of force that was used," and 3) "the extent of injury inflicted."  *Whitley*, 475 U.S. at 321.  Courts should also consider factors such as: 4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them" and 5) "any efforts made to temper the severity of a forceful response."  (*Id.*).  "The absence of serious injury is…relevant to the

_____

(*See* Compl. at 3).  As that claim is best addressed under the Eighth Amendment and has not been briefed by the parties, it is not discussed herein.  *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) ("'[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'").

20cv584-JAH-MDD

Eighth Amendment inquiry but does not end it." *Hudson*, 503 U.S. at 7.

Plaintiff alleges that Defendant used excessive force both by ordering inmate Palmer to attack Plaintiff and by striking Plaintiff in the head with a baton. (Compl. at 11-12). The Court has found that Plaintiff failed to submit sufficient evidence supporting his claim that Defendant ordered inmate Palmer to attack Plaintiff. (*See* discussion *supra* Part IV(a)(ii)). Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** for Defendant on the portion of Plaintiff's excessive force claim relating to the attack by inmate Palmer.

Plaintiff's claim regarding the baton strike requires further analysis. Though the Court has found Defendant is entitled to summary judgment on Plaintiff's claim that Defendant struck him with a baton in retaliation, the circumstances of the baton strike remain unclear. Defendant and Plaintiff provide conflicting accounts regarding the circumstances leading up to Defendant striking Plaintiff in the head with her baton.

According to Defendant and other prison staff witnesses, as Defendant moved to handcuff Plaintiff, who was on the ground, Plaintiff suddenly jumped to his feet and reached out, grabbing Defendant's waist with both hands. (Def. Decl. ¶ 4; Jimenez Decl. ¶ 4). Defendant ordered Plaintiff to "get down," but Plaintiff did not obey. (Jimenez Decl. ¶ 4). Defendant declares she feared for her safety and struck Plaintiff with her baton to protect her safety and well-being. (Def. Decl. ¶ 4). She declares she aimed for his upper left shoulder, but inadvertently struck him in the back of the head. (*Id.*).

Plaintiff disputes Defendant's description. (Oppo. at 3) (disputing that

Plaintiff came to his feet or grabbed hold of Byrd-Hunt's waist).[4]  In support, Plaintiff provides the sworn declarations of two inmate witnesses and his own declaration.  Plaintiff's declaration cannot be considered, as both sides have stated Plaintiff is unable to independently remember the incident. (MSJ at 9; Plaintiff Depo. at 16, 22; ECF No. 19-7, Exhibit D, June 28, 2018 Video Interview of Plaintiff).  According to inmate Biggs, after officers handcuffed inmate Palmer, "C.O. Byrd-Hunt remained standing next to St. Sauver as he layed face down on the floor.  Inmate St. Sauver then reached out to C.O. Byrd-Hunt.  She then took out her baton striking St. Sauver in the back of the head while he layed face down…"  (Biggs Decl. ¶ 3).  Inmate Walker's declaration similarly states: "While laying in the prone position inmate St. Sauver reached out towards Byrd-Hunt.  Byrd Hunt then took out her baton and struck St. Sauver in back of the head…"  (Walker Decl. ¶¶ 3-4).

Plaintiff's witnesses state that Defendant struck Plaintiff while he was on the ground, when he merely "reached out" to Defendant.  (Biggs Decl. ¶ 3; Walker Decl. ¶¶ 2-4).  Defendant's reply does not address the inmates' statements that Defendant hit Plaintiff in the head with her baton while Plaintiff remained on the ground.  (Reply at 3).

Whether Plaintiff was lying facedown on the ground or had jumped to his feet and was holding Defendant by the waist when Defendant struck him with her baton remains disputed, and the Court cannot make credibility determinations or weigh evidence at this stage.  *See Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).  This fact is critical to the Court's ability

---

[4] Plaintiff also disputes Defendant's statement that Plaintiff failed to release her after being struck on the head with her baton.  The Court declines to address this issue as it is not material to the analysis of whether Defendant Byrd-Hunt used excessive force when she struck Plaintiff with her baton.

20cv584-JAH-MDD

to apply *Whitley* factors 1 ("the need for the application of force"), 2 ("the relationship between the need and the amount of force that was used"), and 4 ("the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them"). *Whitley,* 475 U.S. at 321.

Viewing the disputed facts in the light most favorable to Plaintiff, a jury could reasonably find that Defendant's baton strike constituted excessive force. "[B]aton strikes are generally considered 'intermediate force,' and such blows are 'capable of inflicting significant pain and causing serious injury.'" *Garlick v. Cty. of Kern*, 167 F. Supp. 3d 1117, 1147 (quoting *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011)). "Baton blows to the head, however, are recognized as deadly force." *Id.* It is undisputed that Defendant Byrd-Hunt witnessed inmate Palmer hitting Plaintiff in the back of the head with closed fists. (Def. Decl. ¶ 3). According to the declarations of Plaintiff's witnesses, Defendant then struck Plaintiff in the same place with her baton while he was lying facedown on the ground and had merely "reached out" to her. (Walker Decl. ¶ 3; Biggs Decl. ¶ 3). Drawing all reasonable inferences in Plaintiff's favor, a jury could find that the baton strike was made "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7. *See Jimenez v. Sambrano*, No. 04cv1833-L(PCL), 2007 U.S. Dist. LEXIS 102152, 2008 WL 538441, at *14 (S.D. Cal. Sept. 20, 2007) (adopted on Report and Recommendation, *Jimenez v. Sambrano*, No. 04cv1833-L(PCL), 2008 U.S. Dist. LEXIS 14741 (S.D. Cal. Feb. 26, 2008)) (denying summary judgment as to Plaintiff's excessive force claims where there was evidence to support that Defendants beat Plaintiff with batons while he was prone on the ground).

Defendant also argues that the third *Whitley* factor, the extent of Plaintiff's injury, does not support an excessive force claim. (MSJ at 16). Defendant argues, "Plaintiff suffered a minor laceration to his scalp that only needed staples to close, and imaging showed no injuries to his head or neck." (*Id.*). In opposition, Plaintiff has provided sworn declarations of inmate witnesses who state that Defendant's baton strike resulted in "busting his head open," "knocking him unconscious," and "massive bleeding to his head and his body causing his body to go limp." (Biggs Decl. ¶ 3; Walker Decl. ¶ 4). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). Accordingly, the Court finds the extent of Plaintiff's injury does not warrant summary judgment for Defendant.

Based on the conflicting declarations presented by both sides, and in the absence of any objective video evidence of the incident, Plaintiff has established a genuine issue of material fact sufficient to rebut Defendant's motion for summary judgment. As such, the Court **RECOMMENDS** Defendant's motion for summary judgment as to Plaintiff's excessive force claim regarding Defendant striking him with her baton be **DENIED**.

### c. Qualified Immunity

Defendant argues that she did not violate Plaintiff's constitutional rights, and even assuming a constitutional violation occurred, she is still entitled to qualified immunity because "[r]easonable prison officials could have believed that Plaintiff's continued disregard of numerous lawful orders and his violent behavior warranted the use of force necessary to regain control of Plaintiff and end his attack on Byrd-Hunt." (MSJ at 20-21).

"Qualified immunity attaches when an official's conduct 'does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). When considering whether an officer is entitled to qualified immunity, the Court considers "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). A plaintiff must prove both topics of inquiry to establish that officials are not entitled to qualified immunity. *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012).

A district court may address these questions in the order most appropriate to "the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Thus, if a court determines that Plaintiff's allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[T]he clearly established law must be 'particularized' to the facts of the case." *White*, 137 S.Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although the court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S.Ct. at 551 (internal quotation omitted).

The Court must view the evidence in the light most favorable to the plaintiff. *See Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). As discussed above, Plaintiff has provided evidence that Defendant struck him with her baton while he was in the prone position and had "reached out" to her. (Walker Decl. ¶ 3). Contrary to Defendant's characterization, these declarations do not indicate Plaintiff grabbed Defendant in "attack." (Reply

16

at 4).  Defendant's reliance on Plaintiff's admission that he grabbed Defendant is misplaced because both sides have agreed that Plaintiff cannot independently remember the incident.  (MSJ at 9; Plaintiff Depo. at 16, 22; ECF No. 19-7, Exhibit D, June 28, 2018 Video Interview of Plaintiff).

Viewing the evidence in the light most favorable to Plaintiff, he has a viable claim that Defendant's use of force was not a "good-faith effort to maintain or restore discipline" and therefore violated his Eighth Amendment rights.  *Whitley,* 475 U.S. at 320-21.  Defendant has not briefed whether striking Plaintiff was constitutional even if Plaintiff had remained in the prone position.  Nor has Defendant briefed whether a reasonable officer in Defendant's position would have believed this use of force was not a violation of Plaintiff's rights if Plaintiff was on the ground when struck in the head with the baton.  In light of this, the Court declines to find Defendant is entitled to qualified immunity.  Accordingly, the Court **RECOMMENDS** that Defendant is **NOT ENTITLED** to qualified immunity with respect to Plaintiff's excessive force claim regarding Defendant striking him with her baton.[5]

## V.    CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; and (2) **GRANTING IN PART** and **DENYING IN PART** Defendant's Motion for Summary Judgment as

---

[5] Having found that Defendant is entitled to summary judgment on the merits of Plaintiff's First Amendment retaliation claims and Eighth Amendment excessive force claims arising from inmate Palmer's attack, there is no need to consider the defense of qualified immunity with respect to those claims.  *See Wilkie v. Robbins*, 551 U.S. 537, 567 (2007).

17

explained below:

1) Defendant's Motion be **GRANTED** as to all of Plaintiff's First Amendment retaliation claims;

2) Defendant's Motion be **GRANTED** as to Plaintiff's claim that Defendant used excessive force in violation of the Eighth Amendment by ordering another inmate to attack Plaintiff; and

3) Defendant's Motion be **DENIED** as to Plaintiff's claim that Defendant used excessive force in violation of the Eighth Amendment by striking him in the head with her baton and Defendant's claim of qualified immunity.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **August 20, 2021**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **August 27, 2021**.  The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F. 3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:   August 5, 2021

Hon. Mitchell D. Dembin
United States Magistrate Judge